UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| GINGER SMITH,<br><br>                                            Plaintiff,<br>-vs-<br><br>RITE AID CORPORATION,<br>                                             Defendant. | DECISION AND ORDER<br><br>17-CV-6044 CJS |

_____

## APPEARANCES

For Plaintiffs:          Kenneth R. Hiller
                             Seth Andrews
                             Law Offices of Kenneth Hiller
                             6000 North Bailey Avenue, Suite 1A
                             Amherst, New York 14226

For Defendant:        Lisa Soung Hee Yun
                             Sheppard Mullin Richter & Hampton, LLP
                             501 West Broadway, 19th Floor
                             San Diego, California 92101

                             Mark E. McGrath
                             Rena Andoh
                             Sheppard Mullin Richter & Hampton LLP
                             30 Rockefeller Plaza, 24th Floor
                             New York, New York 10112

## INTRODUCTION

In this action Ginger Smith ("Plaintiff") alleges that Rite Aid Corporation ("Rite Aid" or "Defendant"), a retail pharmacy chain, violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by making "robocalls" to her cellular telephone, without her permission, that were intended for a different customer, for whom Rite Aid had filled a prescription. Now before the Court is Defendant's motion to dismiss the Complaint for failure to state a claim. The application is denied.

BACKGROUND

According to the Complaint, between September 2016 and January 2017, Rite Aid made a number of calls to Plaintiff's cellular telephone, using an "automatic dialing machine" and "artificial and/or pre-recorded voiced messages." Plaintiff had never given Rite Aid permission to call her cell phone. Rather, the calls apparently were intended for the person to whom Plaintiff's telephone number had previously been assigned, who had given Rite Aid permission to contact her concerning her prescriptions. Although, it could also be that Rite Aid simply mis-transcribed its customer's number.

The Complaint indicates that Plaintiff received such "wrong number" calls "multiple times per week and often times multiple times per day," but gives no indication whether Plaintiff ever notified Rite Aid that she was receiving the calls by mistake.

As for the content of the recorded messages, Plaintiff has submitted a digital copy of one such message, apparently representative of all the messages, which states:

> Hello, this is your Rite Aid Pharmacy calling to inform [customer name] that the prescription, or prescriptions, you recently requested to be filled have been completed and are ready for you to pick up at 689 Ridge Road East, your Rite Aid Pharmacy, at your earliest convenience. Thank you. Goodbye.

Docket No. [#11-2]. As can be seen, the message does not contain a contact telephone number for Rite Aid, or give the recipient a means of opting-out of receiving future calls.

On January 19, 2017, Plaintiff commenced this action. The Complaint purports to set forth a single cause of action, pursuant to the TCPA and its accompanying regulations, 47 C.F.R. § 64.1200 *et seq*. In particular, the pleading indicates that Rite Aid violated 47 U.S.C. § 227(b)(1)(A)(iii), which states, in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice--
>
> ***
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

47 U.S.C.A. § 227 (West). This provision has been interpreted to prohibit robocalls to a cellular phone whose owner has not given express consent,[1] except where the call is made for an emergency purpose, or where the call is to collect a debt owed to or guaranteed by the U.S. The "emergency purpose" exception includes "calls made necessary in any situation affecting the health and safety of consumers." 47 C.F.R. § 64.1200.

The Federal Communications Commission ("FCC"), which is the agency designated by the TCPA to promulgate regulations implementing the Act, has also issued a ruling recognizing another exception, covering "calls for which there is exigency and that have a healthcare treatment purpose," including "prescription notifications." *ACS International v. Federal Communications Commission*, 885 F.3d 687,711 (D.C. Cir. 2018). However, to qualify for this exemption, such calls must meet several additional criteria. Specifically, the FCC ruling states:

> We grant the exemption, with the conditions below, but restrict it to calls for which there is exigency and that have a healthcare treatment purpose, specifically: appointment and

---

[1] Consent in this regard refers to consent by the person actually receiving the call, not the person for whom the call was intended. *See, e.g., In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8000, 2015 WL 4387780 at *26 (2015) ("We clarify that the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone)."). Consequently, in situations involving robocalls made to a "wrong number," the call is deemed to have been made without consent, even if the person who was previously assigned the telephone number gave consent. *See, ACA Intl. v. FCC*, 885 F.3d 687, 705 (D.C. Cir. 2018) ("[T]he reassignment of a wireless number extinguishes any consent given by the number's previous holder and exposes the caller to liability for reaching a party who has not given consent.").

exam confirmations and reminders, wellness checkups, hospital pre-registration instructions, pre-operative instructions, lab results, post-discharge follow-up intended to prevent readmission, prescription notifications, and home healthcare instructions.

***

We adopt the following conditions for each exempted call (voice call or text message) made by or on behalf of a healthcare provider:

1) voice calls and text messages must be sent, if at all, only to the wireless telephone number provided by the patient;

2) voice calls and text messages must state the name and contact information of the healthcare provider (for voice calls, these disclosures would need to be made at the beginning of the call);

3) voice calls and text messages are strictly limited to the purposes permitted in para. 146 above; must not include any telemarketing, solicitation, or advertising; may not include accounting, billing, debt-collection, or other financial content; and must comply with HIPAA privacy rules;

4) voice calls and text messages must be concise, generally one minute or less in length for voice calls and 160 characters or less in length for text messages;

5) a healthcare provider may initiate only one message (whether by voice call or text message) per day, up to a maximum of three voice calls or text messages combined per week from a specific healthcare provider;

6) a healthcare provider must offer recipients within each message an easy means to opt out of future such messages, voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call, voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future healthcare calls, text messages must inform recipients of the ability to opt out by replying " "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

7) a healthcare provider must honor the opt-out requests immediately.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8031-8032, 2015 WL 4387780 at *49-50.

The pleading contends that the calls Plaintiff received were made "willfully and/or knowingly," thereby causing her "severe emotional distress." The pleading demands statutory damages in the amount of $500 for each call received, as well as treble damages pursuant to 47 U.S.C. § 227(b)(3)(C) (Indicating that the Court may award treble damages if it "finds that the defendant willfully or knowingly violated" 47 U.S.C. § 227).

On March 13, 2017, Rite Aid filed the subject motion [#8] to dismiss pursuant to Rule 12(b)(6), in lieu of an answer. Rite Aid contends that because the phone messages pertained to a medical prescription, there was no violation of 47 U.S.C. § 227, since the calls fall under either the "emergency purpose" exception or the "exigent healthcare-related call" exception.

In opposition to Rite Aid's motion, Plaintiff contends, first, that the "exigent healthcare-related call" exception does not apply to Rite Aid's calls, because they "fail[ed] to adhere to the FCC's list of strict criteria required for the exemption for automated calls from health care providers." Plaintiff points out, for example, that she never provided her phone number to Rite Aid; that Rite Aid exceeded the number of calls allowed per day; and that Rite Aid did not provide a way to "opt out" of receiving the calls. Alternatively, Plaintiff contends that the "emergency purposes" exemption does not apply, because prescription notifications are not an "emergency."

On September 11, 2017, Rite Aid filed a reply.

On September 14, 2017, counsel for the parties appeared before the undersigned for oral argument. During oral argument, in response to the Court's questioning, Rite Aid's attorney acknowledged that the calls made to Plaintiff's phone did not meet the requirements established by the FCC, in its 2015 TCPA ruling, concerning the so-called exigent healthcare exception.

5

ANALYSIS

Defendant has moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). The legal principles applicable to such a motion are clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (citations omitted); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. denied*, 531 U.S. 1052, 121 S.Ct. 657 (2000).

As indicated above, in moving to dismiss, Rite Aid contends that the robocalls which it made to Plaintiff's cell phone fall under either the TCPA's "emergency exception" or its "exigent healthcare message exception." These exceptions are generally considered to be affirmative defenses, which the defendant has the burden of proving. *See, e.g., Latner v. Mount Sinai Health Sys., Inc.*, No. 16 CIV. 683 (AKH), 2016 WL 10571897, at *2 (S.D.N.Y. Dec. 14, 2016) ("emergency purpose" exception to TCPA is an affirmative defense), *aff'd sub nom. Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52 (2d Cir. 2018), as amended (Jan. 9, 2018); *see also,*

*Lindenbaum v. CVS Health Corp.*, No. 1:17-CV-1863, 2017 WL 5562072, at *1 (N.D. Ohio Nov. 20, 2017) (referring to exigent healthcare exception as an affirmative defense).

A Rule 12(b)(6) motion to dismiss based upon an affirmative defense cannot be granted unless it is clear from the face of the pleading that the claim is barred as a matter of law. *See, Deswal v. U.S. Nat. Ass'n*, 603 F. App'x 22, 23–24 (2d Cir. 2015) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") (citations omitted); *see also, Garcia v. Does*, 779 F.3d 84, 96–97 (2d Cir. 2015) ("It is certainly true that motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road."). Consequently, Rite Aid cannot prevail on its motion unless it demonstrates, from the face of the Complaint, that either the "emergency purpose" exception or the "exigent healthcare" exception applies to the calls that it made to Plaintiff.

Rite Aid clearly has not made such a showing with regard to the "exigent healthcare" message exception, since the Complaint indicates that the calls made to Plaintiff do not meet the criteria established by the FCC. As just one example, the FCC permits a caller to make only one exigent healthcare call per day, "up to a maximum of three voice calls . . . per week from a specific healthcare provider," and the Complaint alleges that Plaintiff received such calls from Rite Aid "often multiple times in a single day."[2] Accordingly, Rite Aid's motion is denied insofar as it is based on the exigent healthcare call exception.

Rite Aid nevertheless contends that "prescription notice" calls fit under the "emergency purpose" exception. In this regard, Rite Aid does not argue that it is evident, from the face of

---

[2] Complaint at ¶ 15.

the Complaint, that the prescription-notice calls that it made to Plaintiff involved an actual "emergency," as that term is commonly understood. For example, Rite Aid does not claim that the intended recipient of the calls would suffer death or serious injury if she did not receive the prescription medication.[3] Rather, Rite Aid relies on the TCPA's statutory definition of the "emergency purpose," which applies to calls "made necessary in any situation affecting the health and safety of consumers." *See*, 47 C.F.R. § 64.1200(f)(4) ("The term emergency purposes means calls made necessary in any situation affecting the health and safety of consumers."). In sum, Rite Aid argues that prescription notices affect the health of consumers, and are therefore covered by the emergency purpose exception. However, to the extent that Rite Aid is requesting the Court to rule, as a matter of law, that prescription notice calls are necessarily shielded from TCPA liability by the emergency purpose exception, the Court declines to do so.

"It is a commonplace of statutory construction that the specific governs the general. . . . [T]his canon is particularly relevant where two provisions are interrelated and closely positioned, both in fact being parts of the same scheme." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 31, 133 S. Ct. 2247, 2266, 186 L. Ed. 2d 239 (2013) (citations and internal quotation marks omitted). Under the TCPA regulatory scheme at issue, both the emergency purposes exception and the exigent healthcare message exception could arguably apply to the subject calls, but the former exception is more general, while the latter exception (which specifically refers to "prescription notices") is more specific. Consequently, the more-specific provision applies, which means that prescription notice calls must meet the requirements for exigent

---

[3]Rite Aid would be hard pressed to make a plausible argument in that regard in any event, since it appears that it robotically continued to send the prescription notification calls to Plaintiff's phone over a period of three months, despite not receiving any response, and without taking any further action to determine why the prescription had not been picked up. This indicates that Rite Aid did not consider the situation to be an emergency in the everyday sense of the word.

8

healthcare calls, discussed earlier. Additionally, interpreting the regulatory framework in the manner urged by Rite Aid would make the FCC's inclusion of "prescription notices" within the types of calls covered by the exigent healthcare message exception superfluous.[4] For these reasons, Rite Aid cannot rely on the emergency purpose exception to obtain dismissal under Rule 12(b)(6).

As Rite Aid correctly points out, some other district courts have found that the emergency purpose exception excludes prescription notice calls from TCPA liability, at least where the recipient never notifies the defendant pharmacy that the calls are unwelcome. For example, in *Roberts v. Medco Health Solutions*, Case No. 4:15 CV 1368 CDP, 2016 WL 3997071 (E.D. Miss. Jul. 26, 2016), the court granted the defendant's *summary judgment* motion, finding that the prescription-notice calls in that case fit under the emergency purpose exception. As in the instant case, the calls in *Roberts* were "wrong number" calls, and the intended recipients had given their consent for the calls. The calls were for various members of the same family, including a child for whom the medication was quite important, and the family had notified the defendant that the son's medication was a "must have," and that he "could end up in the hospital" if he did not receive the medication. Not all of the calls involved in *Roberts*, however, pertained to the son's medications. Nevertheless, the court interpreted the emergency purposes exception broadly to cover all of the prescription notice calls, finding that calls relating to prescription medications "fall within the ambit of 'calls made necessary in any situation affecting the health and safety of consumers.'" *Roberts*, 2016 WL 3997071 at *3; *accord, Lindenbaum v. CVS Health Corp.*, No.

---

[4] The FCC has indicated, in a brief that it filed in another proceeding, that to the extent that there might be a healthcare-related call that falls under the emergency purpose exception but outside of the exigent healthcare call exception, "parties can rely on the emergency-purposes exception on a case-by-case basis." *See, ACA INTERNATIONAL, et al., Petitioners, Cavalry Portfolio Services, LLC, et al., Intervenors for Petitioners, v. FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.*, 2016 WL 194146 (C.A.D.C.), 72. The Court interprets this to mean that a party cannot rely on the emergency purpose exception for calls, such as those in this case, that fit under the exigent healthcare call exception.

1:17-CV-1863, 2018 WL 501307 at *2-3 (N.D. Ohio Jan. 22, 2018); *see also, St. Clair v. CVS Pharmacy*, 222 F.Supp.3d 779, 780-781 (N.D.Ca. 2016) ( Indicating that continuing to call about a prescription "when the customer has made clear that he does not want or need the calls, does not fall within the definition of an 'emergency purpose'"; that the FCC would not have needed to list prescription notices within the exigent healthcare call exception if they were already covered by the emergency purpose exception; and that *Roberts* did not establish a *per se* rule, but rather, was decided on its own facts.); *Coleman v. Rite Aid of Georgia, Inc.*, 284 F.Supp.3d 1343, 1346-1347 (N.D. Ga. 2018) (Agreeing with *St. Clair* decision, that emergency purpose exception cannot apply where the recipient has informed the pharmacy that it does not want to receive prescription notice calls). Nonetheless, for the reasons discussed above, the Court disagrees with *Roberts*.

## CONCLUSION

Defendant's motion to dismiss (Docket No. [#8]) is denied. Pursuant to Fed.R.Civ.P. 12(a)(4)(A), Defendant shall file and serve an answer to the Complaint within fourteen days after entry of this Decision and Order.[5]

SO ORDERED.

Dated: Rochester, New York
November 7, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[5] *See*, Fed.R.Civ.P. 12(a)(4)(A) ("if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action").